**TEXAS COUNTY MEMORIAL FOUNDATION, INC., and Dr. W.F. & Mada Dunaway Manor Nursing Home of Guymon, Inc., Appellees,**

v.

**Floy M. RAMSEY and William C. Ramsey, Appellants.**

**No. 59557.**

Court of Appeals of Oklahoma, Division No. 4.

Jan. 17, 1984.

Released for Publication by Order of Court of Appeals Feb. 17, 1984.

Douglas Dale, Wright, Dale & Jett, Guymon, for appellees.

James R. Fletcher, Guymon, for appellants.

BRIGHTMIRE, Judge.

On October 22, 1980, the eighty-eight year old defendant, Floy Ramsey, was admitted to plaintiff nursing home. Her son, defendant William Ramsey, signed his name on two lines where X's were handwritten in, one of which was near the bottom of the admission sheet following some fine print, bearing the title "Standard Admission Waiver," which called for him to pay for his mother's care. The son terminated the agreement March 6, 1981, at which time there was due $175. This action was filed seeking an unpaid balance accruing at $800 a month for Floy Ramsey's care. A default judgment was taken against Floy Ramsey on March 1, 1982, for $8,127.50. Following a hearing on December 9, 1982, the court rejected the son's termination defense and entered judgment

for $16,074.22 against him. The son appeals.

We reverse.

I

The fine print (about $\frac{1}{32}$ of an inch in height) under the "Waiver" paragraph which forms the foundation for plaintiffs' claim reads as follows:

STANDARD ADMISSION WAIVER

The undersigned hereby requests the admission of _____ to your Home, and upon such admission agrees to pay cost of patient's care, giving due allowance for Welfare Assistance, if any. As further consideration of such admission, it is mutually agreed that said Home shall not be held liable for accident or injury to paitent [sic] during residence. It is further agreed that management shall not be responsible for money or valuables left in possession of said patient while a resident of this Home. Management, however, agrees to exercise ordinary care in maintenance of patient's clothing, but assumes no responsibility for wear and tear of same. Undersigned represents that he is patient's (<u>relative or friend</u>) and has legal authority or consent of patient to so act in his or her behalf.

| s/ Earnestine Wood | 10–22–80 |
|---|---|
| Witness | Date |
| s/ X William G. Ramsey | |
| Signature and Relationship | |

The parties stipulated that (1) William Ramsey signed the waiver; (2) the City National Bank and Trust Company of Guymon, Oklahoma, was appointed guardian of Floy Ramsey's estate; (3) on March 16, 1981, William Ramsey notified plaintiff nursing home that he would no longer be responsible for the payment of the home's care charges regarding patient, Floy Ramsey, which at the time amounted to $175.30; (4) William Ramsey received no further "bills" from the home; (5) the bank resigned as guardian August 4, 1981; and (6) one John Garrison was appointed guardian

of Floy Ramsey's estate on May 13, 1982, and was still serving as such at time of trial.

On December 9, 1982, the controversy was submitted to the court for resolution on the basis of the pleadings and the stipulated facts, and he handed down a judgment against William Ramsey for $16,074.22, plus costs and a reasonable attorney's fee.

II

Defendant William Ramsey contends that the stipulated facts do not warrant the legal conclusion reached by the trial judge. We agree.

Emphasis was placed by the court on an inappropriate inference he drew from some language in paragraph three of plaintiffs' petition paraphrasing the waiver, namely, that defendant "signed an agreement to pay cost of patient's care while at said Manor. A copy of said agreement is market [sic] Exhibit 'A' and attached hereto." The trial judge treated this allegation as if it meant that defendant agreed to pay for the patient for as long as she remained at plaintiffs' home and that he would never withdraw his agreement to pay. Of course, this is not what the pleading says, it is not what the waiver says, and it begs the core question of whether the agreement was terminable at will by either party.

Subject agreement is for no definite term. Moreover, we see no provision in it which justifies a legal inference that defendant's promise is irrevocable so long as his mother stays at the plaintiffs' home. In this state the rule has been consistently followed through the years that if a contract does not by its terms fix a period of duration, its life is indefinite and may be terminated by either party at any time. *Dunn v. Dunn*, 391 P.2d 885 (Okl.1964).

Here the parties stipulated that defendant William C. Ramsey notified plaintiffs on March 16, 1981, that he was terminating the agreement at which time the balance due plaintiffs was $175.30. It was further stipulated that plaintiffs mailed no bills to William C. Ramsey after such notification. There is no allegation or evidence that plaintiffs ever requested defendant to move his mother from the home, nor do plaintiffs allege that they ever notified defendant they otherwise wanted Floy Ramsey removed from the home. This suggests plaintiffs were looking to Floy Ramsey's estate or to the welfare department for payment. And finally, this lawsuit was not filed until December 11, 1981.

Termination of an indefinite term contract must, however, be preceded with reasonable notice to the other party. Reasonable notice will, of course, vary with the circumstances. Here plaintiffs' services were being billed monthly. This circumstance favors the conclusion that the contract should have been terminable on 30 days notice. Thus, the most defendant can be liable for under the evidence is whatever was due 30 days after the termination notice was given.

The payment record attached to plaintiffs' petition indicates that they received money from the U.S. Treasury and other sources related to Floy Ramsey and we cannot tell just how much remained unpaid at the end of the 30 day period.

III

The judgment appealed is reversed and the cause is remanded with instructions to determine what amount was due plaintiffs and unpaid on April 16, 1981, and to render judgment against defendant for such amount. We note that plaintiffs stipulated that $175.30 was due on the date defendant gave notice of termination and apparently he was willing to pay that amount. In view of our holding it is apparent that both parties have partly prevailed in the action and therefore neither shall be required to pay the other's attorney's fees. Costs are taxed against both parties, each to pay one half.

DEMIER, P.J., and STUBBLEFIELD, J., concur.